# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3665

_____

| | | |
|---|---|---|
| HealthEast Bethesda Hospital, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| United Commercial Travelers of | * | |
| America, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: October 21, 2009
Filed: March 9, 2010

_____

Before COLLOTON, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

In this diversity case, HealthEast Bethesda Hospital ("HealthEast") sued United Commercial Travelers of America ("UCT") for breach of an insurance settlement contract. The district court[1] granted summary judgment to HealthEast. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

_____

[1] The Honorable David S. Doty, United States District Judge for the District of Minnesota.

I.

In June 2005, Nels J. Hansen purchased a Medicare supplement policy from UCT. That October, he was admitted to HealthEast. Before his admission, UCT informed HealthEast that Hansen was covered by its policy. HealthEast cared for Hansen until his death in April 2006.

In October, HealthEast billed UCT $331,893.40 for Hansen's care. UCT offered to settle for $265,514.72, which HealthEast accepted in November.

Days after settling, UCT obtained Hansen's health records. Reviewing them, UCT concluded that Hansen misrepresented his medical history on the insurance application. UCT rescinded the policy and refused to pay HealthEast. Months after rescinding, UCT hired an expert who determined that its maximum potential liability for Hansen's care was $134,985.44.

HealthEast sued UCT for breach of contract. Both moved for summary judgment. The district court granted summary judgment to HealthEast, ruling that the contract was not voidable because UCT bore the risk of any mistake. The district court awarded HealthEast the full settlement amount, plus interest. UCT appeals.

II.

This court reviews the district court's judgment de novo. *DG&G, Inc. v. FlexSol Packaging Corp. of Pompano Beach*, 576 F.3d 820, 823 (8th Cir. 2009). Summary judgment is appropriate if, viewing the evidence favorably to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Baum v. Helget Gas Prods., Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006).

In a diversity suit, this court applies the substantive law of the forum state, here Minnesota. *See Urban Hotel Dev. Co., Inc. v. President Dev. Group, L.C.*, 535 F.3d 874, 877 (8th Cir. 2008). This court reviews de novo the district court's interpretation of state law. *Id.*

A.

UCT asserts it properly rescinded the settlement based on its unilateral mistake. Under Minnesota law, rescission of a contract for mistake is ordinarily founded on either mutual mistake or a "mistake by one [party] induced or contributed to by the other." *Gethsemane Lutheran Church v. Zacho*, 104 N.W.2d 645, 649 (Minn. 1960). Generally, a party cannot avoid a contract on the basis of a unilateral mistake unless there is ambiguity, fraud, or misrepresentation. *Nichols v. Shelard Nat'l Bank*, 294 N.W.2d 730, 734 (Minn. 1980), *citing Olson v. Shepard*, 206 N.W. 711, 712-13 (Minn. 1926). Even if there is no ambiguity, fraud, or misrepresentation, relief from a unilateral mistake is available where enforcement is an "oppressive burden" and rescission would impose no substantial hardship on the other party. *Gethsemane Lutheran Church*, 104 N.W.2d at 649. A party may not, however, escape contract liability based on unilateral mistake if the party bears the risk of that mistake. *See City of Lonsdale v. NewMech Cos., Inc.*, No. 66-C7-03-001941, 2008 WL 186251, at *9-10 (Minn. Ct. App. Jan. 22, 2008), *citing* **Restatement (Second) of Contracts** § 153 (1981).

The district court denied relief to UCT, ruling that it was a sophisticated party that bore the risk of mistake and could have avoided it by investigating Hansen's policy. A party bears the risk of mistake if it is aware, at the time of contracting, that it has limited knowledge of facts to which the mistake relates, but treats that knowledge as sufficient. *NewMech Cos., Inc.*, 2008 WL 186251 at *10. A court may also allocate risk to a party where reasonable. *See id.*; *Bauer v. Am. Int'l Adjustment*

*Co.*, 389 N.W.2d 765, 768 (Minn. Ct. App. 1986) (finding that an insurance company bore the risk of internal miscommunication).

UCT contends that because HealthEast's claim was substantially larger than its rare high claims, it is not a sophisticated party in this case. This court disagrees. UCT had significant experience in handling and negotiating claims with healthcare providers. A UCT officer estimated that in 2006, the year of the HealthEast claim, UCT handled more than 495,000 claims and had premium revenue exceeding $25 million. According to the record, UCT reimbursed claims of varying amounts, including some exceeding $100,000, and has sufficient knowledge and experience to evaluate claim settlement issues. Although the HealthEast demand was atypical, the district court reasonably allocated the risk of mistake to UCT. *See Pugh v. Westreich*, No. A04-657, 2005 WL 14922, at *4 (Minn. Ct. App. Jan. 4, 2005) (analyzing insurer as a sophisticated party); *Norwest Bank Minn., N.A. v. Verex Assurance, Inc.*, No. C8-95-2292, 1996 WL 363371, at *3 (Minn. Ct. App. July 2, 1996) (allocating risk of mistake to insurer because it was in the best position to evaluate).

UCT also maintains that its inaction does not reach the degree of fault required to deny relief. *See* **Restatement (Second) of Contracts** § 157 cmt. a. The fact that a party could have avoided a mistake by reasonable care neither commands nor precludes rescission. *See id.* In this case, UCT did not exercise anything approaching ordinary care. One month elapsed between HealthEast's billing and the finalizing of the settlement agreement. During that time, UCT sought clarification only of hospital coinsurance information and lifetime reserve days. UCT did not investigate Hansen's health history despite having billing information showing Hansen's medical treatment, including that he entered HealthEast shortly after the policy became effective. UCT also failed to investigate the "exceptionally large" amount HealthEast billed. UCT did not investigate Hansen's medical records until three days *after* settling with HealthEast. Under these facts, UCT's pre-settlement inaction is an easily avoidable mistake. *See Zontelli & Sons, Inc. v. City of Nashwauk*, 373 N.W.2d 744, 752-54

(Minn. 1985) (upholding a trial court's allocation of risk and denial of relief to mistaken parties that could have "easily" avoided the mistake before contracting); *see also **Beasley v. Medin***, 479 N.W.2d 95, 98 (Minn. Ct. App. 1992) (denying rescission because adversely affected party did not conduct an investigation to discover readily available facts). Because UCT bore the risk of mistake, the district court properly denied rescission based on unilateral mistake. *See **NewMech Cos., Inc.***, 2008 WL 186251 at *9-10.

B.

UCT next asserts that the district court erred in granting summary judgment by applying principles of mutual mistake to its claim of unilateral mistake. UCT contends that an allocation-of-risk analysis is relevant only to a mutual mistake. This assertion is without merit. *See **id.*** (allocating risk in a claim for relief based on unilateral mistake); **Restatement (Second) of Contracts** § 153 (explaining that a mistaken party is not entitled to relief under unilateral mistake if it bore the risk of mistake).

The outcome is the same, however, under principles of mutual mistake. As with unilateral mistake, an adversely effected party may not avoid a contract based on mutual mistake if it bears the risk of the mistake. *See **Winter v. Skoglund***, 404 N.W.2d 786, 793 (Minn. 1987). As discussed, UCT possessed the facts necessary to challenge the validity of the policy and the amount of the demand before settling. Nevertheless, it merely subtracted 20% from the total HealthEast demand and offered the settlement amount. UCT failed to investigate Hansen's health history until after the settlement, and did not calculate what it now claims is its maximum liability until 15 months after settling the claim. This record of inaction strongly supports the denial of relief under both unilateral and mutual mistake.

C.

On appeal, UCT also contends that the judgment is a windfall to HealthEast, because it exceeds UCT's maximum liability under its policy. UCT's lone authority, however, provides no support. In *Ferguson v. Cotler*, 382 So.2d 1315 (Fla. Dist. Ct. App. 1980), the appellate court reduced a trial court's award after finding that the parties operated under a mutual mistake. The appellate court noted that relief would be granted for a mistake so long as the mistake was not the result of a lack of due care. *Id.* at 1316. Here, to the contrary, UCT's inaction and lack of due care preclude equitable relief.

III.

The judgment of the district court is affirmed.

———————————————————